IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

STEVEN TAYLOR,                                        CV. 09-278-MA

            Plaintiff,                     OPINION AND ORDER

      v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

            Defendant.

TIM WILBORN
Wilborn Law Office, P.C.
P.O. Box 2768
Oregon City, OR 97405

      Attorney for Plaintiff

DWIGHT C. HOLTON
United States Attorney
District of Oregon
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902

LEISA A. WOLF
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA 98104-7075

      Attorneys for Defendant

MARSH, Judge

Plaintiff Steven Taylor seeks judicial review of the final decision of the Commissioner of Social Security denying his application for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C §§ 401-403.  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  For the reasons that follow, I AFFIRM the final decision of the Commissioner.

### STATEMENT OF FACTS AND PROCEDURAL HISTORY

At the time of the hearing, plaintiff was 48 years old, with a high school education and past work experience as a lumberyard foreman and assistant manager, sales representative, store manager, and forklift driver.

Plaintiff has a history of back injuries.  In 1986, plaintiff underwent a laminectomy and discectomy with a fusion of L4-5 in his lumbar region.  In 1993, plaintiff injured his thoracic spine while working, for which he received workers' compensation.  His workers compensation claim was closed in 1994.  In August 1999, plaintiff re-injured his thoracic spine while working, and shortly thereafter, lost his job.  Plaintiff was treated with physical therapy and injections in his thoracic spine, with no reported relief.  Plaintiff underwent additional discectomies with decompression at L4-5 in October 2002 and August 2003 to alleviate nerve root impingement in his lumbar region.

In the instant proceeding, plaintiff alleges that he became disabled on August 22, 1999, due to an upper back injury, lower back injury, and a muscle disease. Plaintiff meets the insured status requirements for disability benefits through December 31, 2004, and thus must establish disability on or before that date.

Plaintiff filed an application for disability benefits on December 22, 1999. His application was denied initially and upon reconsideration. A hearing was held January 10, 2002, and the administrative law judge (ALJ) issued an unfavorable decision on January 25, 2002. Following a request for review, the Appeals Council remanded the case for further analysis of plaintiff's alleged mental impairments, the opinion of David Hagie, M.D., and plaintiff's alleged left hand impairment. A new hearing before an ALJ was held on November 14, 2005. Plaintiff was represented by counsel and testified, as did a vocational expert. Medical experts John Crosson, Ph.D, and Jay Goodman, M.D., also testified at the hearing by telephone. Both testifying medical experts concluded that plaintiff had become habituated to prescription pain medication, which was hindering plaintiff's recovery, a fact that plaintiff admitted at the hearing. (Tr. 809.) In a lengthy decision issued March 29, 2006, the ALJ found that plaintiff was not disabled as defined by the Social Security Act.

On December 11, 2007, the Appeals Council dismissed plaintiff's Request for Review as untimely. Plaintiff filed a

mandamus action in this court, Civil No. 08-383-ST.  In an October 24, 2008 Findings and Recommendation, adopted November 20, 2008, the court determined that the Commissioner failed to rebut the presumption that plaintiff's request for review was timely filed, and ordered the Appeals Council to consider plaintiff's Request for Review.

Plaintiff submitted additional medical evidence for the Appeals Council's consideration, including information from Jeffrey Thompson, M.D., Glen O'Sullivan, M.D., Mark Greenberg, M.D., and Zakir Ali, M.D., dating from July 2006 to June 2008. (Transcript of Social Security Administrative Record (Tr.) p. 13-27, 78-81.)  Because plaintiff's last date of insured status was December 31, 2004, the Appeals Council considered the additional evidence to concern a later time.  Therefore, the Appeals Council found that the information did not provide a basis for changing the ALJ's decision and denied plaintiff's Request for Review on January 26, 2009. (Tr. 9.)  The ALJ's decision therefore became the final decision of the Commissioner for purposes of review.

## ISSUES ON REVIEW

On appeal to this court, plaintiff contends the ALJ committed several errors: (1) failing to include his anxiety and panic disorder with agoraphobia, muscle disorder, obesity, and pain disorder in the list of severe impairments at step two; (2) failing to properly assess his residual functional capacity (RFC),

including improperly rejecting plaintiff's credibility, improperly assessing the medical opinions, and improperly assessing the lay witness testimony; (3) failing to find that his impairments, including obesity, meet or equal a Listed Impairment at step three; and (4) failing to inquire whether the testimony of the vocational expert (VE) was consistent with the Dictionary of Occupational Titles. Additionally, plaintiff contends that the Appeals Council provided insufficient reasons for rejecting the opinion of Dr. Thompson, information which was not presented to the ALJ.

## STANDARDS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. <u>See</u> <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999). The burden shifts to the Commissioner at step five to show that a significant number of jobs exist in the national economy that the claimant can perform. <u>Yuckert</u>, 482 U.S. at 141-42. "To establish eligibility for Social Security disability benefits, a claimant has the burden to prove he is disabled." <u>Valentine v. Commissioner, Soc. Sec. Admin.</u>, 574 F.3d 685, 689 (9th Cir. 2009).

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. Andrews, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; the court may not substitute its judgment for that of the Commissioner. Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008).

## DISCUSSION

### I. **The ALJ Did Not Err at Step Two.**

Plaintiff alleges the ALJ erred at step two in concluding that several of his physical and mental impairments were not severe. Specifically, plaintiff contends that the ALJ failed to consider plaintiff's anxiety disorder with agoraphobia, pain disorder, obesity, failed spinal fusion, limitations from a left finger re-attachment, and lipid storage myopathy. At step two, the ALJ must

6 - OPINION AND ORDER

determine whether the claimant has any combination of impairments which significantly limits his ability to do basic work activities. 20 C.F.R. §§ 404.1520(c); 416.920(c).

In this case, the ALJ resolved step two in plaintiff's favor, concluding that plaintiff had demonstrated several impairments (degenerative disc disease, thoracic somatic dysfunction, personality disorder, and prescription medication dependence) necessary to satisfy step two. (Tr. 102, 106.) The ALJ properly continued the sequential decision making process until reaching a determination at step five. Any error in failing to designate plaintiff's additional conditions or limitations as not severe did not prejudice him at step two, as step two was resolved in his favor. Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005)(any error in omitting obesity from list of severe impairments at step two was harmless because step two was resolved in claimant's favor); Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007)(any failure to list bursitis as severe at step two was harmless error where ALJ considered functional limitations of bursitis at step four). Accordingly, I find no error in the ALJ's decision concluding that plaintiff's alleged additional impairments were non-severe.

Plaintiff's argument may be construed as a challenge to the ALJ's RFC assessment. Once a claimant has surmounted step two by showing any severe impairment, the ALJ must consider the functional

limitations imposed by all medically determinable impairments, including those found non-severe at step two, in the remaining steps of the decision. 20 C.F.R. §§ 404.1523. I address that contention, as well as his other arguments concerning the RFC, directly below.

## II. __The ALJ Properly Assessed Plaintiff's RFC__.

The ALJ assessed plaintiff with a residual functional capacity (RFC) to perform work at a reduced range of medium exertional level with the following limitations: he is limited to lifting or carrying 25 pounds frequently and 50 pounds occasionally; he must avoid twisting at the waist and repeated bending down; he is precluded from working at heights; he is precluded from operating machinery with a potential for danger; he is precluded from having contact with the public or that requires close teamwork; and he is precluded from occupations requiring interpersonal judgment, emotional skill or tact. See 20 C.F.R. §§ 404.1527, 404.1529. Alternatively, the ALJ concluded that plaintiff could also perform work at the light exertional level with the same limitations.

## A. __The ALJ Properly Discredited Plaintiff__.

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. 20 C.F.R. §§ 404.1529. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be

expected to produce the symptoms alleged. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991); Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996). At the second stage of the credibility analysis, absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. Carmickle v. Comm'r Soc. Sec. Admin., 533 F.3d 1155, 1166 (9th Cir. 2008); Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002); Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008); Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995). Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence. Tommasetti, 533 F.3d at 1039; Bunnell, 947 F.2d at 345-46.

In the instant proceeding, plaintiff alleges that the ALJ improperly discredited his testimony. I disagree. The ALJ made lengthy, specific findings supporting his determination that plaintiff's complaints of pain and fatigue were exaggerated, and that his condition did not prevent him from performing medium or

light exertional work.  Although the ALJ did not make a specific finding of malingering, the ALJ rejected plaintiff's contention that the limiting effects of his pain and fatigability were beyond those of his RFC.

First, the ALJ discussed the results of a Minnesota Multiphasic Personality Inventory ("MMPI-2") test, performed April 29, 2002, which indicated that plaintiff was malingering or exaggerating his symptoms.  The ALJ discussed a second MMPI-2, performed August 15, 2002, which indicated that plaintiff may "consciously embellish his symptoms as a way of manipulating his situation."  (Tr. 100.)  Next, the ALJ noted that plaintiff's allegations of pain are extremely disproportionate to the objective findings in the record, and that his acute periods of illness have been of short duration.  (Tr. 104.)

The ALJ also cited numerous inconsistencies in the record demonstrating that plaintiff's chronic pain and fatigability were not as limiting as asserted, including a May 2005 physical capacities test, in which plaintiff was able to lift 15 to 20 pounds, but in a March 2000 evaluation, he could lift 50 pounds. The ALJ also noted that in a January 2000 report, plaintiff reported that he could not lift, bend or twist or perform any repetitious activity, but in February 2002, plaintiff sought medical treatment for an injury he suffered while working on his motorcycle.

The ALJ noted that plaintiff's November 2005 hearing testimony concerning his inability to hold a pen, write, or handle small screws and nuts, was inconsistent with an August 2005 report that he was able to play the guitar, but had more trouble bridging chords than previously.  Plaintiff also reported in May 2005 that he was basically bedridden and unable to sweep, vacuum, do laundry or other housework.  However, at about that same time, plaintiff reported he could dress and bathe himself, walk two blocks, drive 45 minutes, sit for 30 to 60 minutes, and lift 15 to 20 pounds. (Tr. 639.)

 Lastly, the ALJ noted that despite plaintiff's allegations of diminished mental capacity, plaintiff demonstrated excellent cognitive abilities during the hearing.  Although the ALJ noted that plaintiff takes medication for his pain, the ALJ determined that plaintiff's subjective testimony was only accepted to the extent that it was consistent with his RFC.

Taken as a whole, the ALJ's reasoning reflects that plaintiff's testimony was not arbitrarily rejected.  The ALJ provided specific, clear and convincing reasons for his adverse credibility determination, which is supported by substantial evidence in the record.  Tomasetti, 533 F.3d at 1039; Orteza, 50 F.3d at 750.

////

////

**B.    The ALJ Properly Assessed the Medical Evidence.**

To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons for doing so. <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1216 (9th Cir. 2005); <u>Rodriquez v. Bowen</u>, 876 F.2d 759, 761-62 (9th Cir. 1989). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. <u>Bayliss</u>, 427 F.3d at 1216. An ALJ can meet this burden by providing a detailed summary of the facts and conflicting medical evidence, stating his own interpretation of that evidence, and making findings. <u>Tommasetti</u>, 533 F.3d at 1041; <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989). When evaluating conflicting opinions, an ALJ is not required to accept an opinion that is not supported by clinical findings, or is brief or conclusory. <u>Id.</u> An ALJ also may discount a physician's opinion that is based on a claimant's discredited subjective complaints. <u>Tommasetti</u>, 533 F.3d at 1040.

Plaintiff argues that the ALJ erred in assessing the medical evidence in this case, resulting in a faulty residual functional capacity (RFC) assessment. Plaintiff contends the ALJ improperly rejected medical evidence from Drs. Engel, Hagie, and Ali concerning his alleged muscle disease, Drs. Dunn and O'Sullivan concerning his thoracic pain, and Nurse Practioner Susan Wrona-

Sexton and Dr. Thompson concerning his mental impairments when formulating his RFC.  I address these records in turn.

**1.    Drs. Engel, Hagie and Ali regarding muscle disease.**

Plaintiff argues that the ALJ failed to properly credit his diagnosis of a rare muscle disease, which plaintiff has referred to as lipid storage myopathy or paramyotonia congenita, that causes easy fatigability and weakness and is precipitated by cold weather and exercise.  The ALJ determined that plaintiff did not meet his burden of establishing the muscle disorder.

Contrary to plaintiff's assertions, the evidence concerning his alleged muscle disease is conflicting.  The ALJ offered specific and legitimate reasons for rejecting the controverted opinions of Drs. Engel, Hagie, and Ali concerning plaintiff's alleged muscle disease, which are supported by the record as a whole.  According to plaintiff, in 1991, Dr. Engel diagnosed plaintiff as having a rare muscle wasting disease called lipid storage myopathy.  The ALJ examined the April and June 1991 records of Dr. Engel that were provided, and noted that the records were incomplete.  Indeed, a review of those records confirms that they appear incomplete, and do not contain a clear diagnosis of lipid storage myopathy, consistent with the ALJ's determination.  At best, Dr. Engel's records state that "lipid storage myopathy" may be indicated, and that clinical considerations would include carnitine deficiency.  And, as the ALJ determined, Dr. Engel stated

that following plaintiff's first visit he was "not convinced of any major neuromuscular disease." (Tr. 432.)  The ALJ further noted that Dr. Engel sent a letter dated March 20, 2002, that he was unable to participate in plaintiff's Social Security proceeding and had not seen plaintiff in nearly 11 years.  (Tr. 440.)

As the ALJ discussed, plaintiff attempted numerous times to have his alleged muscle disease diagnosis confirmed, with limited success.  On November 23, 2000, plaintiff was seen by Larry Maukonen, M.D., for a neurologic evaluation of his "muscle disease."  Plaintiff reported to Dr. Maukonen that he was treated with L-carnitine for a year with no improvement.  Dr. Maukonen examined plaintiff and found that his muscle strength was 5/5 in the upper and lower extremity, he could walk heel to toe, and do a full squat rise.  Dr. Maukonen, after reviewing the records from Dr. Engel, noted that Dr. Engel described plaintiff's carotene levels and other lab work as normal, and thus Dr. Maukonen could not confirm the lipid storage myopathy diagnosis. (Tr. 348-51.)

And, the ALJ discussed plaintiff's evaluation by Jau-Shin Lou, Ph.D, M.D., on June 29, 2001, for his possible lipid storage myopathy. (Tr. 352-53.)  Dr. Lou reviewed the muscle biopsy performed by Dr. Engel and determined that "[t]he past workup including biopsy and evaluation by Dr. King Engel was definitely not certain."  Dr. Lou stated that his review of the prior biopsy did not confirm a diagnosis of lipid storage myopathy.  (Id. at

14 - OPINION AND ORDER

353.)  Moreover, Dr. Lou stated that plaintiff "does not have any neurologic evidence of myopathy or neuropathy or any norm of neurological disease." Dr. Lou advised plaintiff to attempt to see Dr. Engel for confirmation. (Id.) Moreover, the ALJ indicated that plaintiff had reported to Dr. Lou that he had been functioning effectively for over 10 years since the possibility of a lipid storage myopathy had been discussed, and Dr. Lou noted that the plaintiff's physical examination was essentially normal.

To be sure, as the ALJ concluded, there was no definitive diagnosis from Dr. Engel of lipid storage myopathy, and despite plaintiff's attempts to confirm such a diagnosis, Drs. Lou and Maukonen did not find any evidence of such myopathy or neurological myopathy to support Dr. Engel's alleged diagnosis.  Although plaintiff complains that Dr. Lou's opinion should be discounted because he did not obtain a muscle biopsy, it is plaintiff's burden to establish disability, and where there are conflicts or ambiguities in the record, the ALJ is the sole arbiter with respect to resolving those ambiguities. Tommasetti, 533 F.3d at 1041-42; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

Plaintiff also complains that the ALJ did not give more credit to the opinion of David Hagie, D.O., who opined in February 2002, that plaintiff's reported lipid storage myopathy, appeared to most likely be paramyotonia congenita, which is "complicating [plaintiff's] thoracic spinal injury." (Tr. 435-36.) The ALJ noted

that in December 2001, Dr. Hagie opined that plaintiff was limited
to a reduced range of light exertional level activity.  The ALJ
gave limited weight to Dr. Hagie's opinion, because it was based on
plaintiff's subjective reporting, and thus was undermined by the
ALJ's determination that plaintiff was less than credible.  An ALJ
may properly reject a treating physician's opinion if it is based
to a large extent on a claimant's self reports which have been
discounted.  Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 602
(9th Cir. 1999).

    Additionally, the ALJ gave Dr. Hagie's opinion about
plaintiff's alleged muscular disease less weight because Dr. Hagie
had reported elsewhere in his records that the lipid storage
disease diagnosis was uncertain, and that Dr. Hagie's opinion
conflicted with other specialists who determined the disease did
not exist.  Again, where there are ambiguities in the record, and
the ALJ's conclusion is supported by substantial evidence, it will
not be disturbed.  Tomasetti, 533 F.3d at 1041-42.

    Plaintiff also asserts that the ALJ erred in assessing the
opinion of Zakir Ali, M.D., who opined that there was "clear
evidence of a lipid storage myopathy."  (Tr. 716.)  The ALJ
explained that he gave no weight to the November 2005 letter
written by Dr. Ali because Dr. Ali was reviewing Dr. Engel's biopsy
report dated April 16, 1991, and did not appear to have the benefit
of a subsequent biopsy or report of June 1991, in which Dr. Engel

16 - OPINION AND ORDER

reports that he "was not convinced of any major neuromuscular disease." (Tr. 717.)

Additionally, the ALJ detailed information from Daniel A. Saviers, M.D., who conducted an evaluation of plaintiff in July 2004. Dr. Saviers performed electrodiagnostic studies, which were normal. Indeed, the ALJ noted that Dr. Saviers found that a diagnosis of paramyotonia congenita was questionable in light of the normal results of the electrodiagnostic studies.

The ALJ also credited the opinion of Jay Goodman, M.D., the testifying medical expert, who concluded that plaintiff did not have lipid storage myopathy, and that other muscle disorders were inconsistent with plaintiff's medical history. Dr. Goodman testified that he had reviewed the entire medical record and concluded that all the examining or consultative specialists seen by plaintiff had concluded that claimant does not have lipid storage myopathy. (Tr. 783.) As the ALJ noted, Dr. Goodman concluded that Dr. Ali did not appear to have a later follow up report from Dr. Engel indicating that later testing did not confirm the muscle disease, or reports from Dr. Lou, who also found no evidence of a myopathy or neurological disease. Dr. Goodman's opinion is supported by substantial evidence in the record as a whole, and the ALJ did not err in crediting it.

On the record before me, the ALJ provided specific, legitimate reasons for rejecting or discounting the opinions of Drs. Engel,

17 - OPINION AND ORDER

Hagie and Ali, which are supported by substantial evidence in the record as a whole.   Additionally, the ALJ's conclusion that plaintiff did not establish the presence of lipid storage myopathy is supported by the record as a whole, and his findings will not be disturbed.   Tomasetti, 533 F.3d at 1041-42; Andrews, 53 F.3d at 1039.

### 2. Drs. Dunn and O'Sullivan regarding thoracic pain.

Plaintiff alleges that the ALJ improperly discounted the opinion of James Dunn II, M.D., who opined on March 7, 2000 that plaintiff was not capable of employment at that time. (Tr. 306.) Dr. Dunn performed the lumbar laminectomy and disk fusion of L4-5 in 1986, and had not treated plaintiff until 2000 when plaintiff reported thoracic pain at the T8-9 following a work injury.  As the ALJ noted, in March 2000, Dr. Dunn obtained MRI's of plaintiff's thoracic spine, which were essentially negative, displaying only mild degenerative changes.   The ALJ gave limited weight to Dr. Dunn's opinion because his opinion was based largely upon plaintiff's subjective reporting, instead of objective medical findings.

The ALJ also gave minimal weight to the opinion of Glenn O'Sullivan, who opined on April 20, 2000 that plaintiff was unable to return to work in the lumberyard due to a work injury to his thoracic spine in August 1993.  The ALJ discounted Dr. O'Sullivan's opinion because it was based on plaintiff's subjective reporting

and that bone scans, MRIs and x-rays of the thoracic spine did not produce any acute findings. The ALJ could properly reject the opinions of Drs. O'Sullivan and Dunn because they were based on plaintiff's subjective symptom reporting. See Morgan, 169 F.3d at 602.

Instead, for the reasons discussed above, the ALJ gave greater weight to the testifying physician, Dr. Goodman. To be sure, the ALJ is responsible for resolving conflicts in the record. Where the evidence reasonably supports the conclusion reached by the ALJ, and is supported by substantial evidence, this court will not engage in second-guessing. Tommasetti, 533 F.3d at 1039; Thomas, 278 F.3d at 959.

### 3. Ms. Wrona-Sexton and Dr. Thompson concerning mental impairments.

Plaintiff also complains that the ALJ failed to provide adequate reasons for discounting the opinion of his primary mental health provider, Susan Wrona-Sexton, a mental health Nurse Practitioner. In the instant proceeding, the ALJ's assessment of plaintiff's mental impairments involved a lengthy four page analysis. The ALJ noted that plaintiff contends to have begun experiencing anxiety in the fourth grade, but first saw a mental health specialist for this condition in November 2001, approximately two years after filing for disability benefits. (Tr. 98.)

The ALJ analyzed a psychological evaluation conducted by Ms. Wrona-Sexton in 2001. The ALJ noted that plaintiff reported to Ms. Wrona-Sexton that he feel anxious, breaks out into sweats despite feeling cold, needs to be in control, and has difficulty sleeping and swallowing.

The ALJ detailed Ms. Wrona-Sexton's impressions that there were no deficiencies noted during that examination, and that plaintiff appeared to have a panic disorder with agoraphobia with a rule out anxiety disorder, with a Global Assessment of Functioning (GAF) of 64. In a January 2002 Mental Residual Functioning Capacity questionnaire, Ms. Wrona-Sexton indicated that plaintiff was marked limited in the following areas: his ability to carry out detailed instructions; his ability to maintain attention and concentration; his ability to maintain a regular, punctual schedule; his ability to complete a normal workday and workweek without interruptions from his psychological symptoms; his ability to interact appropriately with the public; and his ability to travel to unfamiliar places.

The ALJ gave Ms. Wrona-Sexton's opinions concerning the severity of plaintiff's impairments limited weight because they were based upon plaintiff's subjectively reported symptoms, they were not based upon a substantial longitudinal body of evidence, and because she is not highly trained in the mental health field. The ALJ could appropriately discount Ms. Wrona-Sexton's opinion

that plaintiff was disabled because plaintiff's disability is a question reserved to the Commissioner and because Wrona-Sexton was not an acceptable medical source. SSR 06-3p (only acceptable medical sources may establish the existence of a medically determinable impairment); See Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir.), cert. denied, 519 U.S. 881 (1996)(a nurse practitioner working on her own is not an acceptable medical source).

The ALJ also discussed the testimony provided at the hearing by John Crosson, Ph.D. The ALJ noted that after reviewing the evidence in the record, Dr. Crosson diagnosed plaintiff with a personality disorder (Listing 12.08) and substance addiction disorder (Listing 12.09). Dr. Crosson testified that plaintiff's prescription pain medications (especially Methadone), may create plaintiff's symptoms of anxiety and depression, and that the diagnoses of anxiety disorder or affective disorder were not warranted. The ALJ detailed Dr. Crosson's testimony that plaintiff's impairment had a voluntary component, as evidenced by plaintiff's high cognitive performance on several mental status examinations. The ALJ noted that Dr. Crosson determined that plaintiff did not meet the B criteria for any of the Listings, in that plaintiff's impairments created only mild to moderate limitations in activities of daily living, social functioning and concentration, persistence and pace. In response to questioning by plaintiff's attorney, Dr. Crosson stated that he believed plaintiff

had not been disabled at any time under review.  The ALJ gave Dr.
Crosson's opinion great weight because he found it to be consistent
with the overall record evidence.

Continuing, the ALJ discussed records indicating a
prescription pain medication dependence from nurse practitioner
Marguerite Smith, who was assisting plaintiff with chronic pain
following his discectomies in 2002 and 2003 performed by Dr.
Amstutz.  The ALJ described Ms. Smith's report which indicated that
plaintiff was informed that he was to wean from his Methadone, and
that plaintiff got angry and left.  (Tr.  516.)  The ALJ further
detailed records from Dr. Amstutz, with whom plaintiff disagreed.
A review of Dr. Amstutz's records reveals that Dr. Amstutz advised
plaintiff that plaintiff was capable of working at a light to
sedentary level with changes of position between standing, sitting,
and walking.  Dr. Amstutz reports that plaintiff was angry with
that recommendation.  (Tr.  517-18.) And, as the ALJ noted,
plaintiff discontinued his care with Dr. Amstutz.

The ALJ further detailed an independent psychiatric evaluation
performed by psychiatrist S. David Glass, M.D. on August 15, 2005.
The ALJ discussed that Dr. Glass concluded that the diagnoses of
anxiety disorder or panic disorder were not consistent with
plaintiff's history, description of his anxiety episodes, or mental
status examination.  The ALJ discussed Dr. Glass's findings of the
MMPI-2 which indicated that plaintiff emphasized his emotional

distress and symptoms, and although malingering was not substantiated, plaintiff gave the impression that he embellished his symptoms. The ALJ noted that Dr. Glass would recommend weaning plaintiff from his narcotic medications and tranquilizers, and Dr. Glass's opinion that plaintiff's chronic use of these medications was likely a significant factor in the high level of subjective pain, disability, and anxiety. The ALJ also discussed that Dr. Glass found no work related restrictions based on plaintiff's mental impairments, other than those resulting from the use of addicting or sedating agents. (Tr. 101).

Next, the ALJ discussed the evaluation and testing performed by psychologist Douglas Col, Ph.D., who concluded that plaintiff's primary diagnosis was a personality disorder, with avoidance, schizoid, dependent, and passive aggressive features. Dr. Col also diagnosed dysthemic disorder and a generalized anxiety disorder, with a provisional somatoform disorder. The ALJ noted that the results of the MMPI-2 performed by Dr. Col indicated either malingering or exaggeration. The ALJ discussed that Dr. Col believed that pharmacological intervention would not relieve plaintiff's symptoms. (Tr. 447.)

Although plaintiff now contends that the statements in his medical records of symptom exaggeration are more appropriately interpreted as a somatoform disorder instead of exaggeration or embellishment, the ALJ's findings are supported by substantial

evidence in the record.  Even if the evidence would also support
the interpretation plaintiff now urges, the court must defer to the
Commissioner's decision.  Batson v. Comm'r of Soc. Sec. Admin., 359
F.3d 1190, 1193 (9th Cir. 2004); Andrews, 53 F.3d at 1039-40.

In sum, I find no error in the ALJ's assessment of plaintiff's
mental impairments in the RFC determination.  I conclude that the
ALJ provided specific and legitimate reasons, when taken together,
which are supported by substantial evidence, for discounting the
opinion of Ms. Wrona-Sexton.  Tommasetti, 533 F.3d at 1041-42;
Andrews, 53 F.3d at 1039-40.

Plaintiff also contends that the Appeals Council failed to
credit the opinion of Jeffrey Thompson, M.D., dated September 7,
2006, who submitted an opinion that plaintiff is markedly limited
by his panic disorder with agoraphobia.  Dr. Thompson's 2006 report
was not before the ALJ, but was submitted after an adverse ruling.
Plaintiff offers no reason for the delay.  According to plaintiff,
because Dr. Thompson placed the alleged onset date as August 1999,
the time period is relevant to whether plaintiff was disabled as of
December 31, 2004.  The Commissioner contends that the evidence
from Dr. Thompson is not material and does not provide a basis for
remanding the case to the ALJ.[1]

---

[1]The Commissioner also argues that plaintiff has failed to
provide "good cause" for submitting the evidence after the
hearing before the ALJ, and therefore is not entitled to a
remand.   In the present case, however, plaintiff does not

When the Appeals Council considers materials not seen by the ALJ and concludes that the materials provide no basis for review of the ALJ's decision, a reviewing court may consider the additional materials when it determines whether there is substantial evidence supporting the Commissioner's decision.  <u>Lingenfelter</u>, 504 F.3d at 1030 n.2; <u>Harman v. Apfel</u>, 211 F.3d 1172, 1180 (9th Cir.), <u>cert. denied</u>, 531 U.S. 1038 (2000).  <u>See also</u> <u>Ramirez v. Shalala</u>, 8 F.3d 1449, 1451-52 (9th Cir. 1993).

Here, the Appeals Council reviewed Dr. Thompson's post-hearing opinion and found it did not provide a basis for changing the ALJ's decision.  (Tr. 6-7.)  This court reviews the entire record, including Dr. Thompson's opinion, to determine whether Dr. Thompson's statement undermines the evidentiary basis for the ALJ's decision.  I conclude that it does not.

The information from Dr. Thompson does pertain to the time period on or before the closed period of review, however, it does not create a reasonable possibility that the outcome of the case would be different.  The 2006 report from Dr. Thompson notes that plaintiff had experienced some improvement since 2001 and 2003 and discusses plaintiff's daily activities.  (Tr. 76.)  Dr. Thompson's

---

request a remand in light of the new evidence submitted before the Appeals Council.  Instead, plaintiff offers the opinion of Dr. Thompson as support of his substantive challenge to the ALJ's decision under sentence four of § 405(g), and therefore good cause is not required.

2006 report also contains a medical source statement in which Dr. Thompson has checked boxes indicating that plaintiff is markedly limited in three areas of understanding and memory, five areas of sustained concentration and persistence, three areas of social interaction, and two areas of adaption, which have lasted for at least 12 months since an onset date of August 1999. (Tr. 78-81.)

The ALJ would not be bound to credit Dr. Thompson's 2006 report and medical source statement because it is "brief, conclusory and inadequately supported by clinical findings." Mayes v. Massanari, 276 F.3d 453, 462 (9th Cir. 2001). To be sure, check-the-box forms are disfavored. See Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996); see also Murray v. Heckler, 722 F.2d 499, 501 (9th Cir. 1983). Moreover, the ALJ also discussed the diagnosis of panic disorder with agoraphobia from other physicians, whose opinions he rejected in favor of the testifying psychologist Dr. Crosson. As discussed above, I find no error in the ALJ's crediting Dr. Crosson's opinion.

Finally, the persuasiveness of Dr. Thompson's third report is diminished because it was obtained after and apparently in response to the ALJ's adverse decision. See Macri v. Chater, 93 F.3d 540, 544 (9th Cir. 1996); Weetman v. Sullivan, 877 F.2d 20, 23 (9th Cir. 1989). Therefore, I conclude that plaintiff has not established that the evidence from Dr. Thompson submitted to the Appeals Council creates a reasonable possibility that the outcome of the

case would have been different had the ALJ considered the evidence.
Mayes, 276 F.3d at 462.

**C.    The ALJ Provided Germane Reasons for Rejecting Lay Witness Testimony.**

Plaintiff contends that the ALJ improperly discredited the lay witness testimony from his wife.  Lay witness testimony as to a claimant's symptoms or how an impairment affects his ability to work is competent evidence, which the ALJ must take into account. See Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)(finding the ALJ erred by failing to account for lay witness testimony about a claimant's serious coughing problems); see also Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006); Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993).  The ALJ is required to account for competent lay witness testimony, and if he rejects it, to provide reasons that are germane to each witness.  Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).

Here, the ALJ considered the lay witness testimony presented by plaintiff's wife, Wanda Taylor.  As the ALJ discussed, Mrs. Taylor submitted a third party report dated September 2002, in which she described plaintiff's symptoms of his muscle disorder. In that report, Mrs. Taylor discussed that when plaintiff's hands, feet and face are exposed to the cold, they get stiff until they are re-warmed.  Mrs. Taylor also described how repetitive use of plaintiff's hands causes him to get progressively weaker and

slower. (Tr. 405.) The ALJ discounted Mrs. Taylor's testimony on the basis that plaintiff's lipid storage myopathy diagnosis had not been confirmed, and instead gave greater weight to the testifying physician, Dr. Goodman. As discussed above, I have found no error in crediting Dr. Goodman, and I conclude that the ALJ has provided a specific, germane reason for discounting the lay witness testimony of Mrs. Taylor. <u>Bayliss</u>, 427 F.3d at 1218 (the ALJ may accept lay witness testimony that is consistent with the record relating to daily activities, and may reject portions of testimony that are inconsistent with the medical record and unreliable subjective complaints); <u>Lewis</u>, 236 F.3d at 511.

Plaintiff also submits that the ALJ erred in rejecting lay witness testimony from Elin Keffr, a family friend. Ms. Keffr submitted a letter in which she described plaintiff's pain. The ALJ determined that Ms. Keffr's report did not provide sufficient support to alter the ALJ's RFC assessment or the assessment of plaintiff's mental impairments. Ms. Keffr's statement did not describe any specific limitations which were beyond those the ALJ deemed credible in his RFC, and thus it was not error for the ALJ to discount her testimony. <u>Greger v. Barnhart</u>, 464 F.3d 968, 972 (9th Cir. 2006).

**VII. The ALJ Did Not Err at Step 3.**

At step three, the ALJ must determine whether the claimant's impairments meet or equal any of the Listed Impairments considered

28 - OPINION AND ORDER

so severe as to automatically constitute disability.  20 C.F.R. §§ 404.1594(c)(3); 404.1520(d).  <u>Tackett v. Apfel</u>, 180 F.3d at 1098. A claimant must show more than a mere diagnosis of a listed impairment; he must show that he has a medically determinable impairment or impairments that satisfy all of the criteria in the applicable listing.  20 C.F.R. § 404.1525(d); <u>Key v. Heckler</u>, 754 F.2d 1545, 1550 (9th Cir. 1985).  A claimant bears the burden of proving that he or she meets or equals a listing based on clinical and laboratory diagnostic techniques; a "generalized assertion of functional problems" will not establish disability at this step. <u>Tackett</u>, 180 F.3d at 1100; <u>Burch</u>, 400 F.3d at 683.  The ALJ is not required to discuss the "combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence.  <u>Burch</u>, 400 F.3d at 683.  It is plaintiff's burden to offer a theory as to how his impairments combine to equal a Listing.  <u>Id.</u>

In this case, plaintiff contends that when the findings and diagnoses of Drs. Thompson, Shields, Nelson, Glass, Baker, Johnson, and Cristleib, and Ms. Wrona-Sexton are credited and considered in combination with his physical impairments, he should be found to equal Listing 12.06, anxiety related disorders, or Listing 12.07, somatoform disorders.  According to plaintiff, his combined impairments demonstrate that he satisfies the B criteria in that he

has marked restrictions of activities of daily living, marked difficulties in maintaining social functioning, and marked difficulties in maintaining concentration, persistence, or pace based largely upon the opinions of Ms. Wrona-Sexton and Dr. Thompson.

Plaintiff has not met his burden. A review of the medical records reveals that Drs. Shields, Nelson, Glass, Baker, Johnson, and Cristlieb primarily offered diagnoses,[2] which do not suffice to establish that plaintiff equals the severity of a Listing. Key, 754 F.2d at 1549-50 (a diagnosis of a Listed impairment does not establish the severity and durational requirements to satisfy Step Three). And, as discussed above, I find no error in the treatment of the opinions of Ms. Wrona-Sexton and Dr. Thompson. The ALJ's detailed analysis and summary of the medical evidence, which is supported by substantial evidence in the record, amply demonstrates his conclusion that plaintiff's impairments, alone or in

---

[2]Dr. Shields, although opining that plaintiff may have difficulty in maintaining a meaningful mental effort throughout a 40 hour work-week, in completing a medical source statement opined that plaintiff had only slight limitations in his ability to remember and carry out detailed instructions, and otherwise, did not opine about the B criteria of the Listings. (Tr. 634, 636) Dr. Glass diagnosed a pain disorder, but also opined that plaintiff will "continue to use his providers as a way of maintaining his disability status." (Tr. 713.) Dr. Christleib has offered a diagnosis of agoraphobia, but has not opined about the B criteria of the Listings. (Tr. 685.)

combination, did not meet or equal a Listing. No more was required.

Plaintiff also complains that the ALJ failed to consider the impacts of his obesity at steps three through five as required by SSR 02-1p. Plaintiff contends that his obesity "combines with his back impairments to significantly impact his ability to perform light and sedentary exertion by interfering with his ability to sit, stand and walk both cumulatively and at one time." (Plaintiff's Opening Brief (#-) p. 15-16.) Plaintiff argues that because the ALJ failed to discuss plaintiff's obesity in the decision, the ALJ did not consider it, amounting to reversible error.

Social Security Ruling 02-1p provides that obesity is not a separately listed impairment, but may be deemed to meet the requirements if there is an impairment that in combination with obesity, meets the requirements of a listing. SSR 02-01p. Also, an ALJ may not:

> make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. [The ALJ] will evaluate each case based on the information in the case record. SSR 02-01p.

Plaintiff has failed to establish equivalence. Plaintiff has not identified any information from any treatment provider describing how plaintiff's obesity limits his functioning. <u>Burch</u>,

400 F.3d at 683.  Indeed, the medical record is silent as to how plaintiff's functional limitations are exacerbated by his obesity. Moreover, plaintiff points to no hearing testimony or other evidence that his obesity impaired his ability to work.

Indeed, the only evidence in the record concerning plaintiff's obesity are notes that plaintiff is overweight, stocky, or burly, and recommendations that plaintiff lose weight.  (See, e.g., Tr. 682.)  Accordingly, I conclude that the ALJ did not commit reversible error in failing to discuss whether plaintiff's obesity combined with another impairment to establish equivalence of a listed impairment at step three.

Moreover, I conclude that the ALJ did not err in failing to consider plaintiff's obesity in his RFC determination, or hypothetical to the Vocational Expert.  Aside from plaintiff's current complaint that his ability to move around is impeded by his obesity, there is nothing in the vast medical record documenting functional limitations resulting from his obesity.  Because the ALJ considered plaintiff's obesity to the extent required by the record before him, I conclude the ALJ did not err.  Burch, 400 F.3d at 684.

**V.  The ALJ Did Not Err at Step Five.**

At step five, the ALJ concluded that considering plaintiff's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that plaintiff can

perform.    See  20  C.F.R.  §§  404.1560(c),  404.1566.    The  ALJ
concluded,  alternatively,  that  plaintiff  would  be  able  to  perform
the  above  jobs  even  if  he  was  limited  to  work  at  the  light
exertional  level.    Accordingly,  the  ALJ  concluded  that  plaintiff  is
not  disabled  under  the  meaning  of  the  Act.

Pursuant  to  Social  Security  Ruling  (SSR)  00-4p,  ALJs  are
required  to  inquire,  on  the  record,  as  to  whether  the  testimony  of
the  VE  is  consistent  with  the  information  supplied  by  the
Dictionary  of  Occupational  Titles  (DOT).    And,  if  there  is  an
"apparent  unresolved  conflict"  between  the  VE's  testimony  and  the
DOT,  the  ALJ  has  an  obligation  to  elicit  a  reasonable  explanation
for  the  conflict  before  relying  on  the  VE's  testimony.    SSR  00-4p.

The  Ninth  Circuit  has  determined  that  SSR  00-4p  requires  that
an  ALJ  must  inquire  whether  the  VE's  testimony  is  consistent  with
the  DOT  before  the  ALJ  may  rely  upon  it,  and  that  the  ALJ  must
elicit  an  explanation  if  such  a  conflict  exists.    Massachi v.
Astrue,  486  F.3d  1149,  1152  (9th  Cir.  2007).    However,  that  holding
has  been  qualified,  noting  that  "the  failure  to  make  the  requisite
inquiry  is  harmless  where  there  is  no  conflict  or  where  the
vocational  expert's  testimony  provides  sufficient  support  to
justify  any  potential  conflict."    Chand v. Astrue,  2009  WL  3073927,
*14  (E.D.  Cal.  Sept.  22,  2009)(citing  Massachi,  486  F.3d  at  1152
n.2).

In this case, it is undisputed that the ALJ did not inquire at the hearing whether the VE's testimony was consistent with the DOT because the hearing took place long before the decision in Massachi. However, I conclude that the error was harmless.

Here, the VE testified that someone with plaintiff's limitations could perform three jobs, "garment sorter, hand stuffer of products, and table worker" existing in significant numbers. Plaintiff now appears to complain that hand stuffer, DOT 780.687-046, requires "occasional stooping," which is inconsistent with the VE's testimony that if someone with plaintiff's limitations were also limited to occasional stooping, competitive employment would be precluded. (Tr. 803.)

Even assuming plaintiff is correct that hand stuffer requires occasional stooping, the VE identified two other positions, garment sorter and table worker. Because plaintiff has not identified a conflict between the VE's testimony about garment sorter and table worker and the DOT, and none is apparent from my review of the record, I conclude that the ALJ's failure to inquire in this instance was harmless. Cordray v. Astrue, 2010 WL 2608331, *9, adopted in full, 2010 WL 2608336 (D. Or. June 23, 2010).

Plaintiff also complains that the ALJ failed to meet his step five burden because the ALJ's hypothetical to the VE was incomplete. Plaintiff submits that the ALJ's hypothetical was incomplete because it failed to account for all of his limitations

34 - OPINION AND ORDER

because the ALJ improperly discounted his testimony, his physicians opinions and lay witness testimony.    As discussed above, I concluded that the ALJ did not err in fashioning plaintiff's RFC. Because the hypothetical posed to the VE included all of those limitations which the ALJ deemed to be credible and consistent with the medical evidence, the ALJ could reasonably rely upon the VE's testimony.  <u>Stubbs-Danielson v. Astrue</u>, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

<b><u>CONCLUSION</u></b>

For the reasons stated above, the Commissioner's final decision denying benefits to plaintiff is AFFIRMED.    This action is DISMISSED.

IT IS SO ORDERED.

DATED this _12_ day of JULY, 2010.


                                _/s/  Malcolm F. Marsh_____
                                Malcolm F. Marsh
                                United States District Judge